as the Secretary, I believe, of the Department of Education. Ms. Packer, nice to see you, whenever you're ready. Good morning. May it please the Court. House Enrolled Act 1608 puts Indiana's educators, including Ms. Smiley, in a position that the Constitution forbids. It fails to give Ms. Smiley a reasonable opportunity to determine what conduct this statute prohibits, and Ms. Smiley is therefore at continuing risk of severe licensing consequences. What it means for a first grade teacher to provide instruction on human sexuality is not remotely clear. If Ms. Smiley wants to give her students an assignment, her first graders an assignment about their family structures, how is she to do that, given the state's position that sexual orientation is within the ambit of human sexuality as defined by this statute? The state's ever-expanding view of what human sexuality encompasses merely confirms that this statute is impermissibly vague. A reasonable educator in Ms. Smiley's position surely could not determine what the state cannot do, and that is, what is the reach of instruction on human sexuality? As we stand here today, the state has indicated that this statute prohibits any speech relating to an educational purpose concerning a variety of topics, including gender identity, sexual orientation, the significance of sex organs, which, by the way, plays directly into an example that was given as this bill was being debated, which is, could a teacher explain why her body is changing during pregnancy? Does Ms. Smiley have standing to bring these allegations? Seeing when she received her teaching license, the classroom that she was assigned to at the time in October, December of 2012 was not pre-K through third grade, and so this law was limited to pre-K through third grade. Why would she have standing to even bring these claims? Ms. Smiley's classroom is a classroom of pre-K through third grade students. Now, but was it at the time that she filed her claim? I believe that it was, Your Honor. I'm just not aware that it wasn't, if that's the case. I believe that when she began teaching, that was in a pre-K through third grade classroom. She was assigned to be a classroom assistant to a fourth grade class. I was not aware of that, Your Honor. That was not my recollection of the record. It was that she was, maybe it was that she was scheduled to, at the start of that, at the commencement of the next school year, be in the pre-K through third grade classroom at the time after the law would take effect, given that the laws take effect in July. But if I'm misremembering the record, I would be happy to file a supplemental statement on that. But I think it's undisputed. The record, though, is, at least as it stands right now in the procedural posture, is the complaint, correct? Correct. This was in front of the district court at a preliminary injunction. Okay. And in her complaint, Judge Pryor may be right, I'm not sure, but in her complaint, at least, she said that she has acquired a teaching license and that she will begin teaching. I think she filed her complaint in June, but she was scheduled to start in July of 23 in an Indianapolis public school, grades one through three, is at least what she alleged. Correct. Yes, that's correct. The Indianapolis public school district starts in July, much to many parents' and students' chagrin, so that's correct. And in Indiana, laws take effect in July after they're passed by the legislature. So I believe it's undisputed that in addition to that, of course, Ms. Smiley has standing because even the Department of Education has indicated through its attestations that this could trigger, violation of this statute could very well trigger disciplinary action against a teacher who is deemed to violate it. And certainly in today's environment for educators, that is a very credible threat of enforcement. And as Ms. Smiley indicated, her own experience has made clear that these circumstances are likely to come up. Children are inquisitive, and whether it's as a result of an official lesson plan that's determined in advance or in response to teacher questions, or let's say that she hears a fight happen in the hallway outside of her classroom and she goes out and realizes, as has happened before in her experience, that that happened because someone used the term gay pejoratively. How is she supposed to handle that situation without potentially running afoul of this statute? It is simply asking too much of Indiana's educators, especially in this environment, to make sense of that, of this very vague statute. No, go ahead. Indiana does have, I'm looking at two statutes. There's 2034.13. That says schools must include abstinence education as part of their instruction on human sexuality. And there's 2035.7, requires schools to allow parents to opt out of human sexuality instruction for their children. Do the presence of these two statutes give some guide to what human sexuality means? To the contrary, Judge, I think that it actually highlights the vagueness of the statute. And that is because those statutes make clear that what they're talking about is a formal curriculum. To be able to opt out, there has to be something to opt out of. You can't opt out of a spontaneous conversation that's unplanned. So, of course, it's clear from those statutes that what they're talking about is a formal curriculum involving what we would understand to be sex ed. And we know that because of the content of those provisions. They say you have to teach abstinence. You have to teach that the preferred activity is sexual activity only in the context of a monogamous marriage. They actually give substance to the provisions. And that's for, remind me from the record, that's for the third through eighth graders or the eighth graders through. It's a higher level of students. That is, yes, the grade levels of students that actually are instructed on human sexuality. And that raises another point about the statute's vagueness, which is no one teaches this to kindergarteners through third graders. There is no curriculum. So a teacher in Ms. Smiley's position has to say, well, then what could this be applying to? It's clearly not that. So even the existence of those statutes makes clear the statute's vagueness. And, of course. Ms. Packner, you're doing a fine job, and I understand from your brief as well. What's the legal standard for vagueness in this circumstance? So in this circumstance, a statute can be vague in two ways. The first way is that it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. That's part one. Or it can fail to provide standards that would prevent arbitrary or discriminatory enforcement. And we've been focused mostly, I think, on the first of those possible routes to vagueness. The second one is equally obvious here. And I think what makes it the most obvious is the state's changing conceptions here of what conduct the statute covers. Below, the state took the position that this covered the formal instruction of sex education. But now the conception of what it covers is much, much broader. That illustrates how susceptible this statute is to arbitrary enforcement. So even if we could come to some general concept that we think might satisfy vagueness, which, of course, we can't in this statute, we still have the problem of arbitrary enforcement. And, again, in this climate, that is a real risk. Well, if there's enforcement that is alleged to be arbitrary or just violative of a right, you can bring in an as-applied challenge. Of course. And, obviously, that would happen if those circumstances were to arise. But, of course, this Court has made clear, most recently in Brown v. Kemp, that a teacher need not wait to be disciplined in order to do so. Ms. Smiley has the right to figure out what conduct is prohibited before she does something that can put her licensing in jeopardy. So that's why we're here on a facial challenge. This statute is so vague that it simply cannot stand as it exists. Did you agree in the lower court, though, that discernible core of the statute includes sexual education? And why wouldn't that be sufficient? So, we do not agree that the formal instruction of sex education constitutes a discernible core. This Court has said in Curry that an uncertainty so pervasive that most of a law's potential applications are uncertain is unduly vague. And that's exactly what we have here. Even if this statute reaches, and we agree that it reaches the formal instruction of sex education during class time, that is, at best, a miniscule subset of what this statute covers. I mean, that seems like a very difficult position to maintain. I think if you ask somebody to read it, I think what they're going to say is if you're teaching, just say, in first grade, you cannot devote all or a portion of a class to what you might think of as sexual education, just by its terms. I think that's just the kind of plain import of it. I might think that that were the case, except that there is already a statute on the teaching of sex education. If that's what the legislature had in mind, all they had to do was add a provision to that, the statute that Judge Jackson and Cuney quoted to us earlier, saying, and by the way, you can't do this in pre-K through third grade. Well, isn't there an additional issue that this statute applies to all staff? Exactly, Your Honor. So that means no instruction by the receptionist who answers the phone at the school. That's exactly right. Or the janitor. I'm trying to understand why it's all staff specifically and not teachers, if instruction means. I guess I'll ask the state when they come. Yeah, I think that's absolutely right. And the Indiana Code knows how to distinguish between people with an instructional role and people who don't have an instructional role. We generally think of those as certificated employees in the Indiana statutes and non-certificated employees. The statute also uses classroom instruction as a modifier to make clear when it's talking about instruction. Can you think of an example of a prior instance where, in a non-criminal context like this, because it's civil, it's a license, it's a teaching license, where, in response to a challenge to this or that aspect of what's permitted or prescribed with teaching, any court has declared the provision void for vagueness. So civil void-for-vagueness holdings are very rare, very. By my measure, the U.S. Supreme Court, there's one and maybe two in the last 45 years in extremely different contexts. It is. I would say that that is true. Most of these do tend to come up in the context of criminal statutes. Right, and we know. I think we can all agree on this. You can debate it, the content. But curriculum provisions in state statutes are quite common and have been for a long time because they go right to the provision of education. I think there's been a lot of years in the history of the country for various challenges to be brought by teachers. I wasn't able to identify one instance of a civil challenge, like a licensing, a curriculum provision, being declared void for vagueness. I think these provisions are somewhat new, provisions like this one. This is not a book-banning provision, about which we have a fair amount of case law, as it turns out. The thing that underscores that for me is that there is one provision in the Indiana State Code involving prohibited instruction. It's this one. This is not a circumstance that the court has had a great opportunity to evaluate yet. Licensing actions, as I'm sure the court's aware, have life-changing consequences. I don't propose that they reach the same level as a criminal prosecution. But I do think we're going to see more and more of these actions coming up in the civil context. I don't think that's a reason not to find that something is void for vagueness. But I do think that this provision is unique and is unique to the time that we now live in. We have not been able to give you time to talk about the First Amendment claim. That's all right. Obviously, we believe also that the district court committed clear error in finding that this reaches no private speech whatsoever. This court need go no further than Kennedy v. Bremerton to see that even a teacher on the clock during the course of her regular classroom duties can be engaging in private speech. If that were not the case, Kennedy v. Bremerton was wrongly decided. So, we believe that to have been clear error as well and grounds upon which this court could also reverse. If there are no further questions, I'll stay for a minute. No, we asked you a lot of questions. I'll give you a couple minutes on rebuttal. Thank you so much. You're quite welcome. Okay. Ms. Holmes, we'll hear from the state. May it please the court. This is a facial reinforcement challenge to one of many Indiana laws regulating public school instruction. In this law, the legislature has deemed instruction on human sexuality to be a generally off-limits topic for teaching to their youngest students. As the district court recognized, there is no First Amendment problem. Elected officials are permitted to decide what should and should not be taught in public schools about human sexuality. And as a public school teacher paid by the state, Ms. Smiley does not have a First Amendment right to instruct students on whatever topics she wishes. And to the extent that the law reaches protected speech at all, which is doubtful, Ms. Smiley has not shown that it is substantially overbroad. The vast majority of teachers' interactions with students occur while they're at school, during the school day, while on school property, when she is performing her duties as an elementary school teacher. Before you get too deep in this, can I ask you a question, kind of picking up on what Judge Pryor asked Ms. Packer? The state has not raised an issue at all about Article III standing. Okay. That's an issue we have to concern ourselves with, of course, regardless of what position the parties take. Does the state have a position on it? Yes, Your Honor. I think that because she was, as alleged in her complaint, she was imminently about to begin to teach the classes in first through third grade that would be covered by the statute. The state's position is that she did have standing when she brought the suit. Yeah, so no, perhaps not a concrete injury at the time, but an imminent injury. Yes, Your Honor. And I think in between the lines of what you're saying is that the standing doctrine has some flexibility in it or is more solicitous when you have a First Amendment challenge like this brought. Is that fair? I think that is a fair way to look at it. Okay, very well. Thank you. Yes, Your Honor. So the statute also does not violate the 14th Amendment. To survive a facial challenge, a law need only have a discernible core. And here a reasonable person can understand that the law prohibits teachers from lecturing students about sexual intercourse, sexual behavior, sexual attraction. Even Ms. Smiley admits that she understands that she can't give sex education to this group of students. Why then, if it's about lecturing, why then did the Indiana legislature not use the term, as it has in other statutes, classroom instruction? And why then, this is picking up where we were with Ms. Packer, why then broaden it to all staff, third-party vendors, anybody who's in that school? Why not just talk about classroom teachers, classroom instruction and classroom teachers if, as you say, that's what this law really means? Right. Well, Your Honor, I think that the – to answer your questions kind of in turn, the reason – it's apparent in the record. The reason that the law might cover more than just classroom teachers is that it's for the third-party vendor, for example. It specifies a third party of vendors who provide instruction. And Ms. Smiley indicated that at her school, at least, social workers will provide some of this instruction. There might be other staff members at the school who might be involved in providing instruction on human sexuality. So saying that it applies to schools and public school employees without necessarily specifying specifically classroom teachers makes sense. And as for formal versus sort of informal interactions with students, again, the 14th Amendment standard is whether there's a discernible core. And when a teacher is giving a formal lesson plan to students, that's very clear. That's the most clear example you could get. And as Judge Scudder pointed out, this is the standard that applies in criminal context as well. This is the vagueness challenge that just requires a core of meaning. And so the kind of question can end there. I agree with you. Most of what happens in the classroom is that formal kind of teaching, perhaps, perhaps not. Depends on the model of the school. But also a big part is something that Ms. Smiley talks a lot about. It's this library. You know, it's not uncommon for teachers to have books available for students to read. And for teachers not to affirmatively direct the students to those books. They're just laying around in the classroom and students are available to go read them, go pick them up. Maybe there's reading time. Maybe there's unstructured time. With the statute, what is Ms. Smiley to do about those books in her classroom library? Is that instruction or not? What does the statute tell us? I think that we look at what is instruction. Instruction is providing information for the purpose of teaching. Ms. Smiley is providing this classroom library for the purpose of teaching her students. That's the whole point of having this classroom library. So I think that the next question, then, is this instruction on human sexuality. And so then let's go to her exact examples. I can see a principal, if Ms. Smiley goes to her principal and says, I'm having trouble figuring out which books to keep, which books to throw out under this statute. I can easily see a principal saying, and Tango makes three, it's got to go. But Sleeping Beauty, that's been around since the beginning of time. That can stay. How, given that we are also, under the standards we discussed with Ms. Packer, supposed to be looking at arbitrary enforcement and any risk of discrimination in arbitrary enforcement, how are we to understand why the principal's answer makes sense, why Sleeping Beauty can stay and Tango makes three can go? Sure. Well, and I actually would say that I don't think either one of those would have to go under the statute. Instruction on human sexuality is about human sexuality, human sexual behavior, human sexual interest. Just mentioning a family structure, for example, isn't instruction on human sexuality as an ordinary person would understand it. Let's throw in Sleeping Beauty, then. I agree. I still think, Your Honor, that mentioning a kiss in a book is not instruction on human sexuality. So when we get to the fact that there's the standard of whether there's a discernible core, it's not that there is no concern that there will be arbitrary enforcement here. But family structure has a necessary relation to gender identity when students are now talking about reading about families where there are two daddies or two mommies. And we have other statutes, for example. It's not the Indiana statute, but we've got, by comparison, what, a Florida statute or a Kentucky statute? One of them includes the idea of gender identity. How is a reasonable person to know gender identity is not included in this human sexuality definition in Indiana? I think, again, so human sexuality, it concerns expressions of sexual behavior and sexual interest. But the statute says it's instruction on human sexuality. And, again, mentioning a family structure, mentioning that someone has a different gender identity, again, that's not instruction on human sexuality that this statute is concerned with. I guess I'm a little concerned when we're looking at the legislative history that helped define human sexuality and where we got to as far as where the statute started and then what was the end result. And so they gave a listing of the terms that were there before the legislators decided on human sexuality as the word. And it included gender identity, gender roles, gender stereotypes, gender expression. And it was titled Sexual Orientation and Gender Identity Instruction. And we've replaced that now with human sexuality. And so I go back to this discernible core language that we kind of adopted in the Seventh Circuit. It's birthed from Smith v. Gordon. And in that 1970s case, there was this statute regarding the flag. And so the Supreme Court made the decision that even though some conduct, definitely some conduct goes into this statute, into this definition, because we were not clear as to what's cabined and what's not within it, what's without, void for vagueness. And so I guess when we're looking at the discernible core, if Ms. Pachter agrees that sexual education goes in the bucket, how do we know kind of what the boundaries are around the words human sexuality from either the legislator's case, you know, to kind of give us a little bit more direction? Right. Your Honor, so I think that the direction comes from the plain meaning of the terms, and that's how Indiana courts interpret their laws. They will not look to kind of a legislative history that isn't incorporated within the law or with a contemporaneous bill. But rather, courts, when interpreting this law, will look at the ordinary plain term. And the courts could look at the dictionary definition, which is very clearly expressions of sexual human behavior and sexual interest. And that's the cabining of the law. But when we're talking about vagueness. Where's that definition coming from? I'm sorry. So there are several dictionary definitions. It can't be that the mere existence of a dictionary definition means something's not vague. That would invalidate an entire Supreme Court case. Is it courts? I don't recall offhand. But how is the existence of a dictionary definition sufficient evidence that something's not? Everything, you would agree, has a dictionary definition, right? Yes, Your Honor. And I just mention it to let you know, to answer Judge Pryor's question, of how do we decide what conduct is within a statute's terms and which conduct is without? And also to answer Your Honor's question, it's on, you can look at response brief 37 for the definitions on human sexuality, and response briefs 28 and 36 for instruction. But, right, the existence of a dictionary definition isn't what satisfies vagueness necessarily. It's whether there is an applicable standard that's not subject to arbitrary enforcement. And so I would also direct Your Honors to consider this court's decision in the Planned Parenthood versus Marion County prosecutor decision where it applied a facial pre-enforcement vagueness challenge. And that statute had definitions that the court could go back to and discern the discernible core as to what is the statute, and we don't have that here, around the words human sexuality. Yes, Your Honor. So in that case, the court considered whether the question of complications arising from an abortion was unconstitutionally vague. And what the court concluded was that even though complications might only arise very infrequently, rarely, that isn't an indication that there's not a discernible core. So everything we're talking about is criminal law. This is a civil context. And in this particular statute, isn't it important that the statutory scheme contemplates dialogue between teachers and supervisors, whether they're principals or whether it's somebody at the Department of Ed? And if that dialogue occurs, these questions that are raised about how this applies at the margins may be able to get answered that way. But it'll certainly provide guidance to a teacher, and it seems exceedingly unlikely in the face of a dialogue that there's so much ambiguity about what's covered that licenses are at risk of being revoked, civil licenses. Yes, Your Honor. Yes, that's correct. All of the education laws contemplate that there is this dynamic in which teachers are able to seek guidance, schools are able to seek guidance, and ultimately, when we're talking about a facial challenge, there's also the potential adjudicative process that can also answer as-applied questions as they arise. Do you know of any decision in the history of the country where a licensing statute bearing upon curriculum and the provision of education has been declared void for vagueness? No, Your Honor. In any court? No, Your Honor. If the court has no further questions, we ask that you affirm. Okay. Very well. Thank you. Thank you. Inspector, we're going to give you a couple minutes. Thank you. We consumed a lot of your time with questions. Thank you so much, Judge. So I'll start, Judge Scudder, with where you left off, I think, with Ms. Holmes, which is about guidance about the statute. And what's clear in the record is that the Department of Education has no plans to issue guidance. So regardless of what… You mean like regulatory implementation or something? Correct. Correct. None. And how do you know that? Because they attested to it. The DOE's declarant said, we have no plans to issue guidance as to the statute. So regardless of what conversations teachers have with their employers, of course, that's not binding on what the DOE decides to do. And that is why, one of many reasons why there's such a risk of arbitrary enforcement here. I also wanted to touch on, Judge Pryor, your question about the bucket, figuring out what goes into the bucket. And that really is, what is at issue here? And it can't be done, given the language of this statute, at least not from the position of a reasonable educator. It just… All of the tools that we would normally look to, other statutory provisions, as I was talking about with Judge Jackson-McHumey, dictionaries, none of these provide any helpful guidance to an educator like Ms. Smiley, who is trying to figure out if she can answer the question, why does Susie have two mommies? Or, the state has already said, this law applies to circumstances where a teacher would say, sometimes the doctor makes a mistake in telling parents whether their newborn is a boy or a girl. That has nothing to do with what we would normally consider human sexuality. That is gender identity. And that just shows the enormous scope of this statute and all the things that could be in that bucket. If there are no further questions, we ask the Court to reverse. Okay. Ms. Packer, we appreciate it very much. Thanks to you, Mr. Falk, and to the state as well, Ms. Holmes. And we'll take the appeal under advisement. That takes us to our…